

**LEO FASEN, CASBN 53023**
9150 WILSHIRE BOULEVARD, SUITE 175
BEVERLY HILLS, CALIFORNIA 90212
(T) 310-569-4045
(F) 310-859-7773
Email: LFASEN@aol.com

*Attorneys for Plaintiffs* RAY EXLEY and CHARLES EXLEY
and JULIANA LOZA as CO-TRUSTEES of and for the benefit of
THE ATHENA MEDICAL GROUP DEFINED BENEFIT
PENSION PLAN AND TRUST; THE ATHENA MEDICAL
GROUP, INC. DEFINED CONTRIBUTION PENSION
PLAN AND TRUST; THE ATHENA MEDICAL GROUP, INC.
MONEY PURCHASE PLAN AND TRUST; ATHENA MEDICAL
GROUP, INC., a California Corporation; and ATHENA MEDICAL
GROUP, INC., a Nevada Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY EXLEY, CHARLES EXLEY and JULIANA LOZA as CO-TRUSTEES of and for the benefit of THE ATHENA MEDICAL GROUP DEFINED BENEFIT PENSION PLAN AND TRUST, THE ATHENA MEDICAL GROUP, INC. DEFINED CONTRIBUTION PENSION PLAN AND TRUST, and THE ATHENA MEDICAL GROUP, INC. MONEY PURCHASE PLAN AND TRUST; ATHENA MEDICAL GROUP, INC., a California Corporation; and ATHENA MEDICAL GROUP, INC., a Nevada Corporation,<br><br>                Plaintifs<br><br>vs.<br><br>LOIS MARGARET O'BRIEN; AND LOIS MARGARET O'BRIEN AS TRUSTEE OF THE LOIS M. O'BRIEN, M.D. TRUST; | CASE NO. CV13 7569 BRO-MRIV<br><br>COMPLAINT FOR:<br><br>BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; AND FOR SUPPLEMENTAL STATE LAW CLAIMS PURSUANT TO 28 U.S.C § 1367 (a) FOR FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

-1-

*COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS*

1 SIGNATURE ESTATE & INVESTMENT )
 ADVISORS, LLC, GENWORTH LIFE AND )
2 ANNUITY INSURANCE COMPANY, AND ) **[JURY TRIAL DEMANDED]**
 CHARLES SCHWAB & COMPANY,  INC. )
3 )
 )
4 Defendants. )
 )
5 )

6

7   Plaintiffs, CHARLES EXLEY, RAY EXLEY and JULIANA LOZA,

8 collectively in their capacities as Co-Trustees of and on behalf of ATHENA

9 MEDICAL GROUP DEFINED BENEFIT PENSION PLAN AND TRUST, the

10 ATHENA MEDICAL GROUP, INC. DEFINED CONTRIBUTION PENSION

11 PLAN AND TRUST, and ATHENA MEDICAL GROUP, INC. MONEY

12 PURCHASE PLAN AND TRUST (collectively, as appropriate, the "Plans");

13 ATHENA MEDICAL GROUP, Inc., a California Corporation; and ATHENA

14 MEDICAL GROUP, a Nevada Corporation (as successor in interest to ATHENA

15 MEDICAL GROUP, INC., a California Corporation, state and allege as follows:

16

17     **PARTIES AND PRELIMINARY ALLEGATIONS**

18

19   1. Plaintiff Ray W. Exley ("Ray Exley"), at all relevant times was a

20 medical doctor and resident within the Central District of California. Ray Exley at

21 all relevant times served as a co-Trustee for ATHENA MEDICAL GROUP

22 DEFINED BENEFIT PENSION PLAN AND TRUST, the ATHENA MEDICAL

23 GROUP, INC. DEFINED CONTRIBUTION PENSION PLAN AND TRUST, and

24 ATHENA MEDICAL GROUP, INC. MONEY PURCHASE PLAN AND TRUST

25 (collectively as appropriate "The Plans").

26

27

28

*COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS*

1    2.    Plaintiff Charles Exley ("Charles Exley") is a resident of the Western
2  District of Virginia, United States Federal District Court, and, at all relevant times,
3  has served as a co-Trustee of the Plans since December 2012.

4    3.    Plaintiff Juliana Loza ("Juliana Loza") is a resident of the District of
5  Nevada, United States Federal District Court, and has served as a co-Trustee of the
6  Plans since December 2012.

7    4.    Plaintiffs Ray Exley, Charles Exley and Juliana Loza are bringing the
8  within action in their capacities as Co-Trustees of and for the benefit of the Plans.

9    5.    Plaintiff Athena Medical Group, Inc. ("AMG-CA") was, for times
10  relevant to this action, a California corporation organized and existing under the
11  laws of the State of California with its principal place of business located in the
12  County of Los Angeles.

13    6.    Plaintiff Athena Medical Group, Inc. ("AMG-NV") was and is, for
14  times relevant to this action, a Nevada corporation organized and existing under
15  the laws of the State of California with its principal place of business located in
16  Nevada.

17    7.    In 1978 the Athena Medical Group, Inc. (AMG-CA) was initially
18  formed by Ray Exley, which was a California corporation organized and existing
19  under the laws of the State of California with its principal place of business located
20  in the County of Los Angeles, for some of the times relevant to this action.

21    8.    Subsequently an entity of the same name was formed by the
22  Plaintiffs, the afore-noted AMG-NV Inc., as a properly constituted Nevada
23  Corporation and the successor to the AMG-CA. AMG-CA and AMG-NV, Inc. are
24  collectively the adopting employer and sponsor of the Plans.

25    9.    Plaintiff Juliana Loza is at present the President and Chairperson of
26  the Board of Directors of AMG-NV, Inc.

27

28

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE
RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD;
CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND
PERMANENT INJUNCTIONS

10.     The Plans were established pursuant to the 1974 Employee Retirement Income Security Act (ERISA), as amended. At all times relevant to this Complaint, the Plans were employee benefit plans within the meaning of ERISA, 29 U.S.C. §§1002 (3) and (2) (A).  The Plans are various employee pension benefit plans as defined under ERISA, 29 U.S.C. § 1002(2), and were duly formed and created, and exist to provide retirement benefits to the employees of the Plan Sponsor(s).

11.     Defendant Lois Margaret O'Brien (alternatively referred to as "Defendant" or "O'Brien") is an individual residing in the Central District of California. Moreover, O'Brien at all times relevant to this litigation served as Trustee of 'The Lois O'Brien, M.D. Trust '(a revocable living trust) dated April 7, 2008.

12.     Plaintiffs are informed and believe, and on those grounds allege, that O'Brien was a co-Trustee and fiduciary of the Plans, and was removed as said co-Trustee from all of the Plans by AMG-NV, INC. on or about March 2, 2013, she was and is a beneficiary of said Plans although she made no financial or other contributions of any type or character to any of the Plans.

13.     Plaintiffs seek only equitable relief in the form of declaratory and injunctive relief from Defendant Signature Estate Investment Advisors, LLC ("SEIA"), which Plaintiffs are informed and believe and on that basis allege is a California Limited Liability Corporation and is named only as the administrator of various accounts held by O'Brien and/or the O'Brien Trust with account numbers including but not limited to: #XXXX-5750, #XXXX-5069, #XXXX-4142, #XXXX-4274, #XXXX-0083, #XXXX-1025, #XXXX-9400.

14.     Plaintiffs seek only equitable relief in the form of declaratory and injunctive relief from defendant Charles Schwab and Company, Inc. ('Schwab'),

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY  AND PERMANENT INJUNCTIONS

1  which Plaintiffs are informed and believe and on that basis allege is a Delaware
2  corporation, named only as the administrator of various accounts held by O'Brien
3  and/or the O'Brien Trust with account numbers including but not limited to:
4  #XXXX-5750, #XXXX-5069, #XXXX-4142, #XXXX-4274, #XXXX-0083,
5  #XXXX-1025, #XXXX-9400.

6      15.   Plaintiffs seek only equitable relief in the form of declaratory and
7  injunctive relief from Defendant Genworth Life and Annuity Insurance Company
8  ("Genworth"), which Plaintiffs are informed and believe and on that basis allege is
9  incorporated in the Commonwealth of Virginia as a Life and Health Insurance
10 Company and is named only as the custodian of policy number included but not
11 limited to XXXX-5015 for insured: Ray W. Exley and/or the benefit of O'Brien or
12 the O'Brien Trust.

13
14              **JURISDICTION AND VENUE**
15

16     16.   The jurisdiction of this court over the subject matter of this action is
17 predicated on 28 USC § 1331. This action brings breach of fiduciary duty claims
18 arising under 29 U.S.C. §1132(a)(2) for relief under 29 U.S.C. §1109 and claims
19 under 29 U.S.C. §1132(a)(3) for equitable relief concerning defendants'
20 mismanagement of a qualified retirement plan under the Employee Retirement
21 Income Security Act of 1974, 29 U.S.C. §1001 et seq. ("ERISA"). This Court has
22 exclusive subject matter jurisdiction over these claims pursuant to 29 U.S.C.
23 §1132(e) (1).

24     17.   This complaint also brings supplemental state law claims for
25 conversion, fraud, and for an accounting under 28 U.S.C. §1367(a).

26
27
28

*COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS*

1    18.    Venue is proper in this court district under 29 U.S.C. §1132(e) (2)
2  because the Plans are administered here and all of the defendants reside and work
3  within this court district.

4
5
6                          **FACTUAL BACKGROUND**

7
8    19.    Plaintiff Ray Exley is a medical doctor licensed to practice medicine
9  in the State of California. He commenced his practice in Los Angeles in 1971, and
10 completed   his   Anesthesiology   Residency   at   Stanford   University   and
11 Anesthesiology Certification in September of 1975, shortly thereafter joining a Los
12 Angeles area private hospital. Within a year, Ray Exley was appointed as Medical
13 Director of that private hospital.

14   20.    Ray Exley formed AMG-CA, as a business entity to collect his
15 earnings, salary and anesthesiology fees and subsequently established the Plans to
16 maintain and invest those assets. Ray Exley's original intent was to include other
17 practicing medical doctors and, in particular anesthesiologists, as employees of the
18 corporation (AMG-CA, predecessor to AMG-NV, Inc.), and in the various Plans.
19 Among those who Ray Exley sought to include in the Plans and as an officer of the
20 Corporate Sponsor of the Plans was his then-work colleague and former spouse
21 O'Brien.

22   21.    Ray Exley named O'Brien as the titular President of AMG-CA;
23 appointed himself the corporate Secretary/Treasurer of AMG-CA. Both Ray
24 Exley and O'Brien were employees of AMG-CA, and co-Trustees of the Plans.

25   22.    Shortly after Ray Exley founded AMG-CA, O'Brien decided not to
26 enter private practice, choosing instead to remain teaching at Stanford Medical

27
28
*COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE
RETIREMENT INCOME SECURITY ACT ("ERISA"), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD;
CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND
PERMANENT INJUNCTIONS*

School and, when she later relocated to the Los Angeles area with Ray Exley, at UCLA Medical School and Wadsworth Veteran Hospital. Accordingly, O'Brien never practiced medicine under the auspices of AMG- CA or AMG-NV, though she was employed by AMG-CA as noted above

23.     Ray Exley produced all the income of AMG-CA and made all contributions to the Plans for himself and O'Brien as employees of AMG-CA. O'Brien made no monetary contributions of any kind to the Plans; to increase the overall value of the Plans, Ray Exley made said contributions on O'Brien's behalf which were understood to be investment loans.

24.     In or about 1982, in the midst of what was becoming a burgeoning and profitable medical career, Ray Exley became incapacitated with what would later be diagnosed with chronic and severe autoimmune diseases including, Chronic Fatigue Syndrome, fibromyalgia, Raynaud's Disease and other "autoimmune diseases", which completely debilitated Ray Exley, and forced him to retire from his active anesthesiologist practices and as Medical Director of the Hospital.

25.     As a result of these diseases, for approximately the next 10 years, Ray Exley was bedridden and only able to perform limited business tasks for a few hours a month. Ray Exley's short periods of lucidity and activity each week were the result of injections given to him by O'Brien of intercostal nerve block injections to diminish the unrelenting pain. These injections provided Ray Exley with a modicum of relief and REM sleep which subsequently provided periods of normal mental functioning. Only during these brief periods was Ray Exley able to make reasonable decisions, including some related to the administration of the Plans of which he was a co-Trustee with O'Brien.

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS

26.    In mid-1988, Ray Exley's physical condition deteriorated when he developed Autoimmune Renal disease which could eventually lead to complete renal (kidney) failure, a condition which was effectively a death sentence. From 1988-1992, Ray Exley, using his training and background, endeavored to find a cause and effective treatment for these debilitating autoimmune diseases.

27.    Accordingly, after approximately 1984, Ray Exley was incapable of managing and administering the Plans, the Plans' investments, or any other business affairs and thus completely and reasonably relied upon fiduciary and co-Trustee O'Brien.

28.    Insofar as he was mentally and physically disabled, Ray Exley completely relied upon co-Trustee O'Brien to undertake and accomplish the management and administration of the Plans, and for her to exercise of associated fiduciary duties, in compliance with all applicable laws and her co-Trustee's (Ray Exley) specific instructions, an assignment which she accepted.  Ray Exley's primary objective was to assure that the Plans' assets were properly invested and protected, and that the Plans remain valid under applicable ERISA law.  Ray Exley asked O'Brien to modify the liquid assets of some of the Plans' into managed retirement accounts, thereby removing a significant portion of the burden of investment management from  Ray Exley or O'Brien and leaving the Plans in operation and effect.

29.    Ray Exley reasonably expected and understood that that O'Brien, as co-Trustee, would undertake to inform, educate and train herself concerning the administration of the Plans, and to perform her fiduciary duties as an active co-Trustee of the Plans, would include the retaining and oversight of knowledgeable pension plan administration assistance and plan investment assistance, reviewing and understanding the Plans' Trust Documents, Founding Participation

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE
RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD;
CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY  AND
PERMANENT INJUNCTIONS

1   Agreements, ERISA regulations, IRS regulations and applicable ERISA and
2   common law regarding said Plans. Ray Exley also reasonably expected that in
3   addition to undertaking to honor and perform her fiduciary duties as [the effective
4   sole] Trustee of the Plans. Ray Exley believed that simple honesty would guide
5   O'Brien in administering said Plans. O'Brien pledged to follow co-Trustee Ray
6   Exley's direction and her responsibilities as Trustee and Fiduciary.

7       30.   O'Brien had unfettered and unsupervised access and control over the
8   assets of the Plans as the direct and proximate result of Ray Exley's disabilities.
9   During this time frame, O'Brien converted and unlawfully transferred the
10  majority of the Plans' cash assets into O'Brien's personal IRA Accounts.

11      31.   O'Brien further acted to defraud the Plans stating that all of the
12  personal loans and loan interest owed by O'Brien between 1978 and 1990 had
13  been paid in full or were forgiven, thereby relieving her of over $2+ million in
14  obligations and further defrauding the Plans and converting its assets.

15      32.   O'Brien further unlawfully manipulated Ray Exley's disabilities and
16  isolation, including using her professional position and access as a medical
17  doctor, and further by using her fiduciary position as Co-Trustee and of the Plans
18  to "convert" virtually all of the Plans' assets to her sole and separate benefit that
19  is set forth in this Complaint.

20      33.   At all relevant times, O'Brien converted significant portions of the
21  assets of the Plans by funding various Individual Retirement Accounts which
22  O'Brien established in her sole and separate name as set forth in the attached and
23  redacted Exhibit A (the afore-mentioned "IRA Accounts"). O'Brien further
24  misled Ray Exley by stating that all of the funds of approximate value of over $2
25  million (1990 values) were joint, as purportedly evidenced by banking statements

26
27
28

1   denoted as 'Joint Assets of Ray Exley and Lois O'Brien', which in or about 2001
2   had a total value of $4.2+ million.

3       34.    As the result of market growth in investments and additional
4   contributions by Ray Exley, less distributions to cover O'Brien's income shortfall,
5   by 2007 the IRA Accounts still had an approximate value of $3.8 million.
6   O'Brien contends that all of the funds in the IRA Accounts are her sole and
7   separate property, and that she and not Ray Exley earned and made all of the
8   monetary contributions to the Plans.

9       35.    The Plans purchased various life insurance policies (the "Insurance
10  Policies") as investment assets of the ATHENA PENSION PLAN insuring the
11  lives of the Plans' Co-Trustees (Ray Exley and O'Brien); some of said policies
12  were issued by Defendant Genworth. The Insurance Policies have an estimated
13  total value in excess of $1,000,000.00 (one-million dollars).

14      36.    The Plans also made long-term investments including artwork and
15  paintings, art objects, sculptures and collectibles by direct purchase or funding the
16  purchase of the items described in the attached Exhibit B (the "Artworks"),
17  numbering in excess of 50 objects with a present estimated value in excess of two
18  million dollars (two-million dollars). Included in the Artworks purchased by the
19  Plans', was a painting by David Park entitled "Two Heads", Exhibit C ("Two
20  Heads"); Plaintiffs are informed and believe and on this basis allege that this
21  painting was sold at auction in May of 2012 for net amount of $831,000. Plaintiffs
22  contend that O'Brien has wrongly received in excess of $300,000 from the Two
23  Head sale proceeds that are part of the Plans' assets.

24      37.    In or about December 2012, Plaintiffs first discovered that at some
25  previous time, O'Brien, alone or with the assistance of other unknown individuals
26  had executed fraudulent and unequal distributions and transfer of the Plans' assets

27
28

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE
RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD;
CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY  AND
PERMANENT INJUNCTIONS

1  in violation of the 1978, 1984, 1986 and other years "Adoption Agreement",
2  "Statement of Participation" and other "documents and instruments governing the
3  plan", converting these assets into the IRA Accounts in Defendant O'Brien's sole
4  name and for her sole and separate benefit. Plaintiffs were unable to discover the
5  misappropriation earlier due to the acts of O'Brien as well as the severe illness
6  and incapacitation of Ray Exley.

7       38.   Plaintiffs are informed and believe and on that basis allege that
8  O'Brien removed, concealed, hid or otherwise made unavailable the Plans' as
9  well as AMG-CA's business, pension, bank and other records which would have
10  exposed the conversion, misappropriation, failure to repay loans and
11  embezzlement.

12      39.   Plaintiffs are further informed and believe and on that basis allege
13  that, as of May 2007, the IRA Accounts in Defendant O'Brien's name alone, and
14  in her sole possession and control, had an approximate value of $2.8+ million,
15  but, at the time that this action is being filed, have a value of only approximately
16  $900,000.

17      40.   O'Brien, claiming she was the sole source of the funds and therefore
18  had sole and individual ownership, also removed Ray Exley from the IRA
19  Accounts and prevented him from accessing same, along with denying him any
20  authority, in his role as co-Trustee, to make any investment decisions or to receive
21  fund valuation, transaction or trading reports. Ray Exley as co-Trustee of the
22  Plans, in fact did not receive any valuation and activity reports for years 2007-
23  2011, until mid-2011, for the IRA Accounts.

24      41.   In or about mid-2011, Plaintiffs, specifically Plaintiff Ray Exley,
25  finally received the IRA Accounts reports and learned that O'Brien had
26  mismanaged the IRA Accounts, by maintaining the IRA Accounts' entire

27

28
COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE
RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD;
CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND
PERMANENT INJUNCTIONS

investment in the stock market (which had precipitously declined during the 2008-2009 financial crisis). Plaintiffs are informed and believe and on that basis allege that O'Brien acted in this manner in violation of the professional investment advice from S.E.I.A., and advice of Ray Exley as co-Trustee.

42.     Moreover, Plaintiffs discovered that O'Brien had taken additional cash withdrawals of over $1,242,061 (the disposition or whereabouts of said funds is still unknown) included within total withdrawals of over $2+ million as of June 2011.

43.     By these personal withdrawals and refusal to follow professional investment advice, O'Brien caused the Plans' investment portfolio's value to decline from $3.8 million in May of 2007 to only $1 million less than 18 months later in February 2009.

45.     By no earlier than September 2011, Plaintiffs learned, and are, at present, informed and believe and on that basis allege, that in or about June 2008 and continuing through February 2010, that O'Brien made various attempts to obtain loans for O'Brien's sole personal benefit that were to be secured by the cash value of assets of the Plans, including the Insurance Policies purchased as investments by the Plans from and issued by Genworth. Plaintiffs are further informed and believe and on that basis allege that O'Brien was informed by Genworth that before any such loans could be made, co-Trustee O'Brien had to provide written authorization from co-Trustee and insured, Ray Exley.

46.     Plaintiffs discovered and learned, no earlier than March of 2012, that O'Brien, using extralegal means, in fact obtained three loans collateralized by the cash value of the Plans' Insurance Policies: 2 loans for $100,000 each and a 3rd for $210,000, for a total sum of $410,000.00 (hereinafter the "Genworth Loans"), all obtained without the consent of co-Trustee Ray Exley.

47.   Plaintiffs are informed and believe, and on that basis allege, that O'Brien misappropriated the funds from the Genworth Loans to purchase real estate and/or a timeshare interest in Florence, Italy, and spent other of the monies for O'Brien's sole benefit including vacation trips to Europe, clothes and artworks and have further withdrawn over $50,000 from the Schwab Accounts to pay interest on said loans.

48.   In or about August-September of 2012, Ray Exley, in his capacity as the Plans' co-Trustee, made demand upon O'Brien to affirm title of all artwork then in the control and possession of Ray Exley or O'Brien in the name of the Plans.  As of the date of this filing, O'Brien has refused to provide any irrefutable documentation such as cancelled checks or bank statements.

49.   Further, in or about August-September of 2012, Ray Exley, in his capacity as the Plans' co-Trustee, made demand upon O'Brien for her to authenticate and acknowledge that title to the Artworks and the IRA Accounts containing funds from the Plans were the exclusive property of the Plans. In December 2012, O'Brien refused to provide such authentication and proof. O'Brien has failed and continues to fail and refuse to acknowledge such ownership title or to return the funds to the Plans.

50.   Defendant O'Brien has admitted that, from 1978 to the time of her admission (in approximately December, 2012), she was primarily responsible for many of the investment decisions and was a Fiduciary of the Plans.

51.   Plaintiffs are informed and believe and on that basis allege that at all relevant times, O'Brien knew that corporate, financial and other important records of the AMG-CA and the Plans were stored at the D&L Storage (Santa Monica Mini Storage) rental storage facility located at 1620 14th Street, Santa Monica California 90404. Plaintiffs are informed and believe and on that basis allege that

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS

O'Brien entered the storage facility at various times and removed many corporate and financial records of AMG-CA and the Plans.  When Plaintiffs requested the return of the documents, O'Brien stated they had been stolen and were likely destroyed, refusing to provide any document what so ever.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR BREACH OF FIDUCIARY DUTY
### UNDER 29 U.S.C. § 1132 (A) (2) FOR
### APPROPRIATE RELIEF UNDER 29 U.S.C. § 1109

52.     Plaintiffs incorporate the allegations included in paragraphs 1 through 51 by this reference.

53.     ERISA imposes a prudent person standard upon fiduciaries in their operation and administration of a qualified retirement Plan. ERISA imposes certain remedies for any failure to comply with these fiduciary duties, including relief under 29 U.S.C. §1132(a)(2): (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

54.     Under ERISA, a fiduciary may bring a claim to enforce and redress ERISA's provisions, and to obtain appropriate equitable relief. 29 U.S.C. §1132(a) (3). See, e.g., *Waller v. Blue Cross*, 32 F.3d 1337, 1339 (9th Cir. 1994).

*COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS*

55.     Plaintiffs are informed and believe, and on that basis allege, that at all relevant times, O'Brien was legally bound as Trustee of the Plans, having accepted the such legal obligations and title by signing Trustee and Plan agreements on August 11, 1978, October 14, 1980, , March 10, 1986, *inter alia.* True and correct copies of said relevant and signed trust agreements are collectively attached to this Complaint as Exhibit D.

56.     By O'Brien's execution of said trust agreements, she affirmed that she owed the fiduciary duty to preserve and maintain all "audit, accounting and tax records" of the Plans and AMG.

57.     O'Brien was not removed as Trustee until March 2, 2013. A true and correct copy of the removal notice is attached to this Complaint as Exhibit E.

58.     O'Brien, as Trustee, failed to adopt and implement any investment policies, nor did she seek, at a minimum, any professional investment advice concerning the proper investment and management of the Plans' assets. This failure subjected the Plan to a loss of earnings, to be demonstrated according to proof.

59.     Plaintiffs allege that under ERISA §405, 29 U.S.C. §1105, for her failure to act, O'Brien is required to make good any losses to the Plan occasioned by her failures and fiduciary breaches.  Inter alia, among the acts in breach of her fiduciary duty to properly invest the assets of the Plans, in approximately the Spring of 1008, even though investment professionals urged O'Brien to modify the Plans' investment portfolio to avoid the downturn of the investment markets, O'Brien took sole and individual control over the funds and all financial data, and ignored all professional advice, to the damage of the Plans and the assets thereof.

*COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS*

1    60.    At all times relevant to this dispute, Plaintiffs and the Plans reposed
2    trust and confidence in O'Brien with respect to the investment, management and
3    supervision of the Plans and the Plans' assets.

4    61.    Moreover, by virtue of her status as an officer of AMG-CA, and a
5    Trustee of the Plans, and as a further result of the above-described relationship of
6    trust and confidence that existed between O'Brien, on the one hand, and the Plans
7    and its beneficiaries, on the other, O'Brien owed AMG-CA and the Plans strict
8    fiduciary duties of trust, loyalty, and due care.

9    62.    Among other things, O'Brien's fiduciary duties required her to refrain
10   from mismanaging the Plans or misappropriating any of the Plans' assets.

11   63.    O'Brien breached the fiduciary duties she owed to AMG, Inc., the
12   Plans, and the Plans' participants by grossly mismanaging the Plans and their
13   assets, as alleged *supra*.

14   64.    Moreover, Plaintiffs are informed and believe and on that basis state
15   that O'Brien actively concealed her wrongful conduct, and went to great lengths to
16   deceive Plaintiffs, the Plans, and the Plans' successor Trustees into believing that
17   O'Brien was utilizing her best efforts on behalf of the Plans and their participants,
18   and in discharging the fiduciary duties of trust, loyalty, and due care she owed
19   thereto.

20   65.    In particular, O'Brien attempted to conceal her mismanagement of the
21   Plans and its assets by, *inter alia*, failing to maintain proper documentation
22   thereof, by converting assets of the Plan for her own personal benefit, by
23   fraudulently making claim to assets of the Plans as her own, and by diverting
24   assets of the Plan to her own personal accounts.

25   66.    As a direct and proximate result of O'Brien's above-described
26   breaches of her fiduciary duties and other misconduct, Plaintiffs, the Plan Sponsor,

27
28   *COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE
RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD;
CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND
PERMANENT INJUNCTIONS*

1  and the Plans have incurred damages in as-yet unascertained amounts, to be
2  proven at trial.

## SECOND CLAIM FOR FRAUD—CONCEALMENT AND SUPPRESSION

[Against Defendant O'Brien]

8      67.    Plaintiff hereby incorporates the allegations included in paragraphs 1
9  through 51, and paragraphs 53 through 66.

10     68.    At all times relevant to this dispute, O'Brien was obligated and duty-
11  bound to make full and fair disclosure to the Plans and the participants of said
12  Plans of all material facts concerning the Plans' collective affairs, assets,
13  accounting records, and other documents.

14     69.    Plaintiffs are informed and believe and on that basis alleges that at all
15  times relevant to this dispute, O'Brien suppressed, concealed, and failed fully and
16  fairly to disclose to AMG-CA, AMG-NV, the Plans, and to Plans' participants
17  certain material facts, information, and documentation concerning the Plan's
18  affairs, assets, accounting records, and other documents, as alleged more
19  specifically in paragraphs 15 through 51, and 53 through 66, *supra*.

20     70.    In addition, Plaintiffs are informed and believe and as heretofore
21  alleged, O'Brien failed to properly maintain accounting records and other
22  documentation demonstrating her above-described intentional wrongdoing and
23  gross negligence, and consistently and repeatedly concealed, possibly destroyed,
24  suppressed, and refused to provide such records and documentation of her acts and
25  omissions when asked to do so by Plaintiffs.

26

27

28

*COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA"), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS*

71.     Additionally, Plaintiffs have discovered that while co-Trustee of the Plans, and an officer of AMG-CA, O'Brien fraudulently made unequal distributions of the assets of the Plans in violation of Plan documents, including without limitation, the 1978, 1984, 1985 and 1991 "Adoption Agreement", "Statement of Participation" and other plan documents, thus converting these assets into the IRA Accounts in O'Brien's sole name and for her sole and separate benefit. O'Brien intentionally concealed these distributions from Plaintiffs.

72.     Due to the above-described concealment and suppression by O'Brien of the nature and extent of her intentional wrongdoing, Plaintiffs currently have limited knowledge and understanding of the scope and potential consequences of all of the Defendant's acts and omissions.

73.     Therefore, Plaintiffs reserve the right, upon further investigation and discovery, to amend this complaint to allege the true nature and extent of O'Brien's suppression and concealment with regard to the Plan's affairs, assets, accounting records, and other documents.

74.     As a direct and proximate result of O'Brien's concealment and suppression of, and failure fully and fairly to disclose, the above-described material facts, information, and documentation, Plaintiffs and the Plans have suffered damages in as-yet unascertained amounts, to be proven at trial.

## THIRD SECOND CLAIM FOR FRAUD

[Against Defendant O'Brien]

75.     Plaintiffs incorporate by this reference the allegations contained in paragraphs 1 through 51, paragraphs 43 through 66, and paragraphs 68 through 74 of this Complaint.

76.    At various relevant times, O'Brien represented to Ray Exley that The afore-described Artworks purchased or funded by the Plans, and in fact all artwork in the possession of either O'Brien or Ray Exley were assets of the Plans.

77.    At other various relevant times, O'Brien recanted these ownership statements, and represented and stated to Ray Exley that the Artworks were in fact O'Brien's sole and separate property, providing Ray Exley with receipts that O'Brien claimed were proof her purported ownership of The Artworks. Plaintiffs are informed and believe and on that basis allege that said representations and receipts are in fact false, and that the receipts were in fact forged and/or altered by O'Brien or by persons acting on her behalf and at her direction.

78.    Plaintiffs are further informed and believe that said Artworks have an estimated value of between $2,000,000.00 and $5,000,000.00.

79.    O'Brien acted as herein alleged intentionally, maliciously, fraudulently and oppressively, entitling Plaintiffs to exemplary and punitive damages in an amount according to proof.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## FOR DECLARATORY RELIEF

80.    Plaintiffs incorporate by this reference the allegations contained in paragraphs 1 through 51, paragraphs 53 through 66, paragraphs 68 through 74, and paragraphs 76 through 79 of this Complaint.

81.    Plaintiffs allege and state that actual controversies have arisen and now exist among the parties.

82.    Plaintiffs contend that the following items are all the property of the Plans:

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS

A. THE IRA Accounts and all monies held by Schwab and administrated by SEIA (Exhibit A); and

B. The Artwork (Exhibit B); and

C. Insurance Policies issued and held by Genworth are owned by the Plans; and

D. All financial, tax, accounting, business, investment or other records still in existence and disposition of those destroyed or lost; and

E. Any and all banking, investment, insurance, trust, foreign or other accounts owned, controlled, administered or sourced by O'Brien.

83.   Plaintiffs contend that the IRA Accounts are not a protected asset of O'Brien but instead are assets and the sole property of the Plans;

84.   Plaintiffs contend that the Artwork, the IRA Accounts, And the Insurance Policies and yet undetermined hidden assets are the sole property of the Plans.

85.   Plaintiffs are informed and believe, and on that basis state and allege that O'Brien alleges that she is the owner of most if not all of the Artworks, the IRA Accounts, and the Insurance Policies, and denies the existence of other funds or assets.

86.   A judicial declaration of the rights and obligations of the parties is necessary and appropriate at the present time so that the parties can ascertain their rights.

///

///

///

COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY  AND PERMANENT INJUNCTIONS

## FIFTH CLAIM FOR RELIEF FOR AN ACCOUNTING

[Against Defendants O'Brien and O'Brien Trust]

87.   Plaintiffs incorporate by this reference the allegations contained in paragraphs 1 through 51, paragraphs 53 through 66, paragraphs 68 through 74, paragraphs 76 through 79, and paragraphs 81 through 86 of this Complaint.

87.   As a result of Defendants' actions, it is extremely difficult to determine the amount that O'Brien owes the Plans without an accounting. Plaintiffs are informed and believe and on those basis allege that the amount due may exceed $10,000,000.00 (ten million dollars).

88.   Plaintiffs are informed and believe and on that basis allege that Defendant O'Brien has converted or concealed other unknown assets of the Plans and that the amount is unknown.

89.   Plaintiffs are informed and believe and on that basis allege that Defendant O'Brien has embezzled, expropriated or converted funds in The IRA Accounts which were exclusively sourced from the Plans and that the amount of loss is unknown.

90.   Defendant O'Brien should be ordered to render an accounting to the Plans at her cost, and that she be ordered to pay to the Plans all monies found to be due.

///

///

///

-21-

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS O'BRIEN, O'BRIEN TRUST, SEIA, SCHWAB AND GENWORTH FOR RESTRAINING ORDERS AND RELATED INJUNCTIVE RELIEF

91.    Plaintiffs incorporate by this reference the allegations contained in paragraphs 1 through 51, paragraphs 53 through 66, paragraphs 68 through 74, paragraphs 76 through 79, paragraphs 81 through 86, and paragraphs 88 through 90 of this Complaint.

92.    Defendant O'Brien has purposefully and for her own sole and personal benefit, withdrawn purported funds that are the property of the Plans from the IRA Accounts managed by SEIA and held at SCHWAB reducing the fund value from approximately $2.8 million to zero except for the increase in the market value of approximately $997,000 achieved by SEIA as investment managers.

93.    From approximately September 2009 through July 2012, Defendant O'Brien executed loans against the cash value of life insurance policies ("Insurance Loans") which are believed to be the assets and property of the Plans in the amount of at least $410,000.

94.    From in or about October 2009 through the present, Defendant O'Brien has withdrawn at least $50,000 from the IRA Accounts to pay interest on the Insurance Loans.

95.    From in or about August 2012 through the present, Defendant O'Brien has made claims that The Artworks purchased or paid for by the Plans are her sole and separate property.

-22-

*COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD; CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS*

96.     Plaintiffs are informed and believe and on that basis allege that Defendant O'Brien has made withdrawals, transfers, purchases, and loans, concealed and otherwise disposed of over $3 million from the IRA Accounts, and save for the investment savvy of SEIA, would have reduced the IRA Accounts to zero dollars.

97.     Plaintiffs are informed and believe and on that basis allege that Defendant O'Brien has made significant loans using the collateral of the Artworks and other of Defendant O'Brien's assets to chattel, indebt, pledge, warrant, hypothecate or otherwise compromise the free and clear title to said Artworks which are the rightful property of the Plans.

98.     Plaintiffs respectfully request that this Court issue a Temporary Restraining Order, enjoining the Defendant O'Brien and her agents, assigns, employees and all others related to O'Brien from transferring directly or indirectly, concealing, hypothecating, concealing or otherwise disposing of all artwork, monies and other personal property in her possession or under her control.

99.     Plaintiff prays upon the Court to issue appropriate injunctive relief, enjoining Defendants SEIA, Schwab, and/or Genworth from transferring directly or indirectly, concealing, hypothecating, concealing or otherwise disposing of monies, securities, stocks, bonds and any and all other liquid assets under their custody or control relating to the Plans.

///

///

///

1

## REQUEST FOR RELIEF

2

3            Plaintiffs hereby request the following relief:

4

5            (a)    An order requiring Defendant O'Brien to personally, and
6    jointly and severally with Defendant Lois M. O'Brien, M.D. Trust, to make the
7    Plans whole to the extent not otherwise achieved, including any future, but
8    presently unknown losses to the Plans arising out of Defendant O'Brien's tenure as
9    Trustee of the Plans;

10           (b)    An order under California law against awarding damages for
11   Defendant O'Brien's fraud, concealment, and/or breach of fiduciary duty, as
12   pleaded in the first, second and third causes of action, *supra*;

13           (c)    An order for attorneys' fees and costs under ERISA, 29 U.S.C.
14   §1132 (f);

15           (d)    An order for an accounting against each and all Defendants;

16           (e)    A judicial declaration of the rights and obligations of the each
17   and all of the parties to this litigation regarding the Artworks, the IRA Accounts,
18   and the Insurance Policies;

19           (f)    A temporary restraining order, preliminary and permanent
20   injunctions against Defendant O'Brien and Defendant O'Brien Trust, and all
21   agents, assigns, employees and all others related to O'Brien from transferring
22   directly or indirectly, concealing, hypothecating, concealing or otherwise
23   disposing of all artwork, monies and other personal property in O'Brien's or
24   O'Brien Trust's possession or under their collective or individual control.

25           (g)    A temporary restraining order, preliminary and permanent
26   injunctions against Defendants O'Brien, O'Brien Trust, SEIA, Schwab, and

27
-24-
28   *COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE*
*RETIREMENT INCOME SECURITY ACT ("ERISA"), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD;*
*CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND*
*PERMANENT INJUNCTIONS*

1   Genworth from transferring directly or indirectly, concealing, hypothecating,
2   concealing or otherwise disposing of monies, securities, stocks, bonds and any and
3   all other liquid assets under their custody or control relating to the Plans.

4         (h)   For damages according to proof;

5         (i)   For punitive and exemplary damages, according to proof;

6         (j)   For such further order as the court deems appropriate.

7

8   Respectfully submitted,

9

10  October 8 , 2013                    LEO FASEN

11

12                          By: _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

-25-

28  *COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE*
*RETIREMENT INCOME SECURITY ACT ("ERISA "), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD;*
*CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND*
*PERMANENT INJUNCTIONS*

1

## DEMAND FOR TRIAL BY JURY

2

3    Plaintiffs, by and through their counsel of record, and pursuant to the Federal

4    Rules of Civil Procedure, demand a trial by jury of all jury-applicable claims.

5

6    October 8, 2013                    LEO FASEN

7

8                          By: _____

9                              Leo Fasen

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                   -26-
28    *COMPLAINT FOR BREACHES OF FIDUCIARY DUTY BY PENSION FUND TRUSTEE UNDER THE EMPLOYEE*
      *RETIREMENT INCOME SECURITY ACT ("ERISA"), 29 U.S.C. §1001 ET SEQ.; FRAUD (CONCEALMENT); FRAUD;*
      *CONVERSION; DECLARATORY RELIEF; ACCOUNTING; TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND*
      *PERMANENT INJUNCTIONS*