# EXHIBIT "3"

# PART 1 OF 2

```
Evan B. Schenkel, Esq., State Bar No. 72532
EVAN B. SCHENKEL, A PROF. CORP.
20750 Ventura Boulevard, Suite 340
Woodland Hills, California 91364-2338
Telephone:  (818) 676-0951
Facsimile:  (818) 676-0957
Email:      ebslaw@pacbell.net

Barry T. Harlan, Esq., State Bar No. 41388
Vanessa Soto Nellis, Esq., State Bar No. 229100
LEWITT, HACKMAN, SHAPIRO, MARSHALL
 & HARLAN, A Law Corporation
16633 Ventura Boulevard, Eleventh Floor
Encino, California 91436-1865
Telephone:  (818) 990-2120
Facsimile:  (818) 981-4764
Email:      Bharlan@lewitthackman.com
            VNellis@lewitthackman.com

Attorneys for Plaintiff RAY EXLEY, M.D.
```

CONFORMED COPY
OF ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 14 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
   RUGENA LOPEZ

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

### UNLIMITED JURISDICTION

| | |
|---|---|
| RAY EXLEY, M.D., an individual, | Case No. BC423736 |
| Plaintiff, | COMPLAINT FOR: |
| vs. | 1. DAMAGES FOR BREACH OF ORAL AGREEMENT; |
| LOIS O'BRIEN, M.D., an individual, and DOE 1 through DOE 50, inclusive, | 2. SPECIFIC PERFORMANCE OF ORAL AGREEMENT; |
| Defendants. | 3. RELIEF BASED ON EQUITABLE ESTOPPEL; |
| | 4. DAMAGES FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; |
| | 5. IMPOSITION OF CONSTRUCTIVE TRUST WITH ACCOUNTING; |
| | 6. DECLARATORY RELIEF; |
| | 7. DAMAGES FOR BREACH OF FIDUCIARY DUTY; AND |
| | 8. PRELIMINARY AND PERMANENT INJUNCTIONS |

Plaintiff RAY EXLEY, M.D., an individual, (hereinafter "RAY") hereby brings his causes of action against the above-named defendants and alleges as follows:

///
///

-1-

C:\DATA\EXLEY\CivilAction\Pleadings\Complaint(4)101309.wpd

COMPLAINT

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

A. **THE PARTIES.**

1. RAY is an individual residing in the County of Los Angeles, State of California.

2. Defendant LOIS O'BRIEN, M.D. ("LOIS") is an individual. RAY is informed and believes, and on information and belief alleges, that LOIS is a resident of the County of Los Angeles, State of California.

3. RAY and LOIS are husband and wife. They are presently involved in marital dissolution proceedings which were initiated by LOIS on June 21, 2007, to wit, the family law case known as *Lois O'Brien vs. Ray Exley*, Los Angeles Superior Court Case No. BD 468094, which is now pending in Department 60 of said Court (hereinafter the "Dissolution Case").

4. At all times since 1976, both RAY and LOIS have been domiciled in the State of California.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOE 1 through DOE 50, inclusive, are presently unknown to RAY, who therefore sues said defendants by said fictitious names. RAY is informed and believes, and on information and belief alleges, that each of the defendants designated in any cause of action contained in this pleading as a fictitiously named defendant is, in some way, manner or form, and to some extent, responsible for the acts, the events and the happenings alleged and referred to in such cause of action, and that each of said defendants in some way, manner or form, and to some extent, caused detriment, damage and injury to RAY and/or is otherwise liable to RAY as alleged in such cause of action. At such time as RAY may ascertain the true name and capacity of any of said fictitiously named defendants, RAY will seek leave to amend this pleading by setting forth the same.

6. RAY is informed and believes, and on information and belief alleges, that at all times mentioned in any cause of action contained in this pleading and at all times relevant to the subject matter of any such cause of action, each defendant named in such cause of action was, and that each such defendant presently is, the agent, the principal, the employer, the employee, the spouse, the

///

-2-

partner, the joint venturer, the representative and/or the alter ego of each and every other defendant named in such cause of action.

7. RAY is informed and believes, and on information and belief alleges, that each and every act, event and happening alleged in any cause of action contained in this pleading to have been done, caused, suffered, allowed or permitted by defendants, or by any of them, was done, caused, suffered, allowed and permitted by each and every defendant: (a) in his, her or its capacity as the agent, the principal, the employer, the employee, the spouse, the partner, the joint venturer, the representative and/or the alter ego of each and every other defendant; (b) within the scope and course of such relationship or of his, her or its duties as the agent, the principal, the employer, the employee, the spouse, the partner, the joint venturer, the representative and/or the alter ego of each and every other defendant; (c) in the transaction of the business of such agency, employment and/or other relationship; and (d) with the permission, consent and ratification of each and every other defendant. Therefore, among other things, each defendant named in such cause of action is liable for all of the actions and omissions alleged therein.

8. In and for purposes of any given cause of action contained in this pleading, each and every reference to any or all of defendants, wherever appearing in this pleading, is intended to be, and shall for all purposes be deemed, construed and determined to be, a reference to each and every defendant against whom such cause of action has been brought, including, but not limited to, all fictitiously named defendants against whom such cause of action has been brought.

B. **JURISDICTION.**

9. The acts, events, conduct and happenings underlying this action either occurred or caused injury, loss or damage which occurred within the County of Los Angeles, State of California. Therefore, the above-entitled Court has jurisdiction of this action.

10. This action is properly filed as one of unlimited jurisdiction because the damages alleged hereinbelow exceed $25,000.00.

///
///

-3-

### C. UNDERLYING ACTIVITIES OF THE PARTIES.

11. This Complaint follows the very lengthy relationship between the parties which commenced prior to 1976. In 1976, LOIS and RAY married for the first time. Said marriage occurred on the campus of Stanford University, in the City of Palo Alto, County of Santa Clara, California. However, shortly thereafter, RAY found himself in some business involvements which could have developed, but fortunately did not develop, into legal liability and RAY did not want his new wife to be, legally, a part of that. Therefore, the parties filed for divorce in 1977 in the Superior Court for the County of Santa Clara, State of California, and that divorce, which was amicable and uncontested at all times, became final in 1978.

12. Thereafter, pursuant to an express oral agreement between them (the "Agreement"), the parties lived together as though they were married, as more fully set forth in the immediately following paragraph. The Agreement was made during the parties' first marriage.

13. The essential terms of the Agreement include those set forth in this paragraph. The parties would live, indefinitely, as though they were husband and wife. At all times while doing so, all rights, responsibilities and obligations between them, including but not limited to all property rights between them, would be the same as they would be if the parties had remained married. Thus, among other things, all property acquired by either party which would have been community property if acquired during marriage while domiciled in the State of California would be common property ("Common Property") of the parties and subject to the same rules and laws applicable to community property acquired by married couples domiciled in the State of California.

14. The Agreement contains an implied covenant of good faith and fair dealing which obligated and obligates defendants to perform in accordance with the terms of the Agreement, to do so fairly and in good faith, and to refrain from doing anything that would prevent RAY from performing, or would impede his performing, any of the terms and conditions of the Agreement or anything that would deprive RAY of any of his benefits of or under the Agreement.

15. The Agreement constitutes both an oral partnership agreement and an agreement recognizable, and which should be recognized, by the above-entitled Court under *Marvin vs. Marvin* (1976) 18 Cal.3d 660 and its progeny.

-4-

16. Subsequent to the parties' aforementioned divorce, the parties, pursuant to the Agreement, lived as though they were husband and wife until 1992, when they married for the second time. At that point, each of the parties had abided by the terms of the Agreement and no breach of the Agreement had occurred.

17. The period of approximately 14 years from the finality of the divorce in 1978 until the second marriage in 1992 is hereinafter referred to as the "Cohabitation Period."

18. During the Cohabitation Period, the parties' relationship was characterized by numerous indicia of marriage, including, but not limited to, those stated in this paragraph. The parties lived together except when they were temporarily working in different cities, but even then they spent time together in a manner typical of happily married couples temporarily living in different cities because they were temporarily working in those different cities. They had joint checking accounts and joint credit cards. They filed joint tax returns. They made joint acquisitions of real and personal property, including but not limited to their extensive art collection now worth in excess of $1,000,000.00. They took joint vacations. They exchanged gifts and cards as happily married couples typically do. They made continuing financial contributions to their Common Property. They referred to each other as husband and wife. They introduced each other to third parties as husband and wife. They otherwise acted as happily married couples typically do. They never separated within the meaning of California Family Code Section 771. Their friends did not even know they were not married.

19. During the Cohabitation Period, the parties purchased two real properties. The first, their current home in Beverly Hills (the "Beverly Hills Home"), was purchased before the aforementioned liability risks terminated and therefore was initially acquired in the name of LOIS alone and subsequently conveyed by LOIS to LOIS and RAY once the liability risks had ceased, which occurred during or about 1985. The second property, a vacation home in Lake Tahoe, Nevada (the "Vacation Home"), was purchased after the liability risks terminated and therefore was initially acquired in both names.

20. The Beverly Hills Home is commonly known as 9504 High Ridge Place, Beverly Hills, California 90210 and is legally described as follows:

"Lot 29 of Tract 20668 in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 671, Page 39 through 42 inclusive of Maps, in the Office of the County Recorder of said county."

21. The Vacation Home is commonly known as 429 Panorama, Stateline, Nevada 89449 and is legally described as Lot 13, Kingsbury Palisades, Assessor's Parcel #1318-25-111-017.

22. In 2007, LOIS commenced termination of the parties' relationship of more than 30 years by moving out of the Beverly Hills Home and filing the Dissolution Case. Thus, for more than 30 years, LOIS and RAY lived as a married couple, first during the period of their first marriage, then throughout the 14-year Cohabitation Period, and thereafter during the period of their second marriage, which has not terminated.

23. Within the two years last past, LOIS breached the Agreement by serving papers in the Dissolution Case asserting that some of the Common Property is LOIS's separate property and that RAY has no rights with respect to any of that property. Said breach occurred on or about January 12, 2009, when LOIS served her Preliminary Declaration of Disclosure in the Dissolution Case (the "Disclosure"), wherein she made said assertion.

24. RAY is informed and believes, and on information and belief alleges, that LOIS further breached the Agreement, within the two years last past, by wasting Common Property and/or transferring Common Property to one or more third parties and/or otherwise concealing Common Property from RAY.

25. Plaintiff is informed and believes, and on information and belief alleges, that defendants further breached the Agreement by reason of LOIS's recent transfer of title to the Beverly Hills Home in violation of a restraining order issued in the Dissolution Case, which order was pending at the time of said transfer and is still pending as this pleading is filed.

///
///
///
///

## FIRST CAUSE OF ACTION

### (For Damages for Breach of Oral Agreement)

### (Against All Defendants)

26. RAY hereby realleges and incorporates herein by this reference, as though set forth verbatim at this point, Paragraphs 1 through 25, inclusive, of this pleading.

27. By reason of, *inter alia*, the facts, matters, events and circumstances set forth hereinabove, defendants, and each of them, have breached the Agreement as more fully set forth hereinabove.

28. As a direct, proximate and reasonably foreseeable result of defendants' said breaches, RAY has been damaged and hereafter will be further damaged, all in a sum which at present cannot be ascertained with exactitude, but which RAY is informed and believes, and on information and belief alleges, is in excess of the minimum unlimited jurisdictional sum of the above-entitled Court. RAY therefore alleges said damages to be in an amount according to such proof as may be adduced by RAY hereafter in this action. RAY will seek leave of Court to amend this pleading to allege said sum at such time as it may become known to RAY with exactitude. RAY is entitled to interest on all damages, according to proof.

## SECOND CAUSE OF ACTION

### (For Specific Performance of Oral Agreement)

### (Against All Defendants)

29. RAY hereby realleges and incorporates herein by this reference, as though set forth verbatim at this point, Paragraphs 1 through 25, inclusive, of this pleading.

30. The Agreement was just and reasonable as to defendants and the consideration accruing to defendants was adequate in that defendants received the benefit of property acquisitions by RAY which were treated as part of the Common Property and not as RAY's separate property. Thus, among other things, defendants have already enjoyed their benefit of the bargain under the Agreement.

///

31. In reliance on the Agreement, RAY fully performed all covenants, conditions and promises required to be performed by him in accordance with the terms of the Agreement, except any as to which defendants, or any of them, prevented RAY from performing.

32. As more fully set forth hereinabove, defendants have not fulfilled the promises LOIS made to treat all of her acquisitions of property made during the Cohabitation Period as part of the Common Property. Among other things, defendants now seek to have the Beverly Hills Home determined to be separate property of LOIS and not part of the Common Property.

33. RAY has no adequate remedy at law to enforce all of his rights under the Agreement. Each of the Beverly Hills Home and the Vacation Home is a unique residential property which was acquired by the parties for their personal use and enjoyment, and not as an investment property. Similarly, the parties' art collection consists of unique objects of art. Therefore, damages will not suffice to compensate RAY for defendants' breaches of the Agreement, at least with respect to said real property and said art collection.

34. Defendants have failed and refused, and continue to fail and refuse, to perform in accordance with the terms of the Agreement in that, among other things, LOIS now claims that the Beverly Hills Home is her separate property.

35. Any failure to enforce the Agreement would result in unjust enrichment to defendants because RAY was induced to, and did, seriously change his position in reliance on the Agreement, to wit, he treated all of his property acquisitions made during the Cohabitation Period as part of the Common Property, pursuant to the terms of the Agreement. In doing so, (a) the items he treated as Common Property included but were not limited to money which would have been his separate property but for the Agreement and (b) in addition to so treating same, the parties expended such funds for the benefit of the community which RAY and LOIS comprised during the Cohabitation Period.

36. In light of the foregoing, RAY can and will be made whole only by the issuance and enforcement of a judgment compelling defendants, and each of them, to specifically perform the Agreement in accordance with its terms by, *inter alia*, treating the Beverly Hills Home as part of the Common Property and not further claiming that said property is the separate property of LOIS.

-8-